NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH WILLIAMS,

    Plaintiff,          Civil No. 10-2449 (PGS)

  v.

JOHN CLANCY, et al.,          OPINION

    Defendants.

APPEARANCES:

  JOSEPH WILLIAMS, Plaintiff pro se
  248 New York Avenue
  Jersey City, New Jersey 07307

LINARES, District Judge

  Plaintiff Joseph Williams seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915. The Court will grant Plaintiff's application to proceed in forma pauperis and, for the reasons expressed below, will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction over claims arising under New Jersey law.

I. BACKGROUND

  Plaintiff asserts violations of his constitutional rights by 13 officials at Talbot Hall Assessment and Treatment Center in Kearny, New Jersey.[1] Plaintiff asserts the following facts[2]:

---

[1] According to the New Jersey Department of Corrections, "Talbot Hall is a Residential Community Release Program (RCRP) that partners with the New Jersey Department of Corrections (DOC) to assist prisoners as they reenter the community. Talbot Hall functions as a cornerstone facility along a continuum of care between the NJ prison system and reintegration into the community for the offenders." N.J. Dept. of Corrections, http://www.state.nj.us/
(continued...)

1. On May 13, 2008, defendant Keith Hooper, Supervisor of Operations, instructed defendant John Doe Counselor "to place him within a holding cell for the Plaintiff's failure to properly smile during the process of his identification photograph." (Docket Entry #1, p. 3.)

2. On May 13, 2008, defendants "did endorse an unscrupulous policy that failed to provide the Plaintiff with a Law Library while he was a resident of the Community Education Center known as Talbot Hall." (Id., p. 4.)

3. On May 13, 2008, defendants "did deny him access to the Courts by not possessing a Law Library within the boundaries of the facility known as Talbot Hall, a branch of the Community Education Center, Inc." (Id., p. 5.)

4. On June 16, 2008, defendants "did record his legal communication with the Clerk of the United States District Court." (Id., p. 6.)

5. On June 18, 2008, defendants "did take total control over the funds in his possession upon his placement within a holding cell of the Community Education Center known as Talbot Hall." (Id.)

6. On June 18, 2008, defendants "did withhold his legal documents from him and/or his family." (Id.)

7. On June 18, defendants "did conspire to withhold the Plaintiff's legal documents by not returning this documentation to either him or his family." (Id.)

8. On June 19, 2008, "Defendant, Mr. McClary, [Business Manager,] did withhold a check sent from the parent facility, Northern State, by taking full control over those funds and the remainder of the funds stated in the Plaintiff's Trust Account, upon his return to prison." (Id., p. 7.)

9. On June 18, 2008, "Defendant, Jacqueline Perry, [Contract Administrator,] did fail in her obligation to properly oversee the return of his legal documents, the funds in his possession, and, the funds within his Trust Account by the staff of the Community Education Center known as Talbot Hall." (Id.)

(Docket Entry #1, pp. 3-7.)

---

[1](...continued)
corrections/SubSites/OCP/ocp_rcrp_locs/Talbot.html (Mar. 24, 2010).

[2] This Court's rendition of Plaintiff's allegations excludes Plaintiff's conclusions.

Plaintiff maintains that defendants violated his constitutional rights and New Jersey law. He seeks declaratory relief, unspecified injunctive relief, and compensatory and punitive damages. (Docket Entry #1, p. 10.)

## II. STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A. The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id. A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint

> states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

The Third Circuit observed that Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] which was applied to federal complaints before Twombly. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal and Twombly,

> a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S.

---

[3] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

> Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler, 578 F.3d at 210-11 ("a complaint must do *more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts*") (emphasis supplied).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). With these precepts in mind, the Court will determine whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### III. DISCUSSION

Federal courts are courts of limited jurisdiction. See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331. Specifically, 42 U.S.C. § 1983 authorizes a person to seek redress for a violation of his or her federal rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other

> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

This Court reads the Complaint as attempting to assert the following claims under 42 U.S.C. § 1983: (A) the placement of Plaintiff in a holding cell for failing to properly smile for his identification photograph violated the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment; (B) the taking of Plaintiff's funds violated the Due Process Clause of the Fourteenth Amendment; and (C) the failure to provide access to a law library, the recording of his communication to the Clerk of this Court, and the withholding of unspecified legal documents from Plaintiff violated his First Amendment right of access to courts.

A. Placement in Holding Cell

Plaintiff asserts that "on May 13, 2008, Defendant, Keith Hooper, [Supervisor of Operations at Talbot Hall,] instructed Defendant, John Doe Counselor #1 to place him within a holding cell for the Plaintiff's failure to properly smile during the process of his identification photograph." (Docket Entry #1, p. 3.) This Court construes this allegation as an attempt to assert claims under the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishments Clause of the Eighth Amendment.

The Fourteenth Amendment forbids states from denying "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "One must have an interest in life, liberty, or property before due process protections are triggered." Artway v. Attorney General of the State of New Jersey, 81 F.3d 1235 (3d Cir. 1996); see also Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Inmates have no liberty interest arising by force of the Due Process Clause itself in remaining in the general population. See Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983). Plaintiff has no state-created liberty interest in avoiding placement in a holding cell, as this is not an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995) (prisoner has no liberty interest in avoiding 30 days in disciplinary segregation); Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (detention for 15 days and administrative segregation for 120 days was not atypical treatment for New Jersey prisoner); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (prisoner has no liberty interest in avoiding segregation for 15 months as a suspect in the rape of a female corrections officer). Plaintiff does not indicate how long he was confined in the holding cell or describe the conditions. Because the facts alleged by Plaintiff do not show that he was deprived of a liberty interest, this Court will dismiss the due process claim. However, because Plaintiff may be able to assert facts stating a claim, the dismissal is without prejudice to the filing of an amended complaint stating a cognizable due process claim under Sandin.[4]

---

[4] If Plaintiff elects to file an amended complaint stating a due process claim, he should include specific facts regarding the duration and the conditions of confinement. See Pressley v. Blaine, 352 Fed. App'x 701 (3d Cir. 2009) (In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) the conditions of that confinement in relation to other prison conditions).

To state a claim under the Eighth Amendment, an inmate must allege both an objective element and a subjective element. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). To establish a conditions of confinement claim, an inmate must show objectively that the alleged deprivations are sufficiently serious. See Farmer, 511 U.S. at 834. Conditions are sufficiently serious when they deny the inmate one identifiable basic human need or deprive him of the minimal civilized measure of life's necessities. See Wilson v. Seiter, 501 U.S. 294, 305 (1991). A prisoner must also show that the official acted or failed to act with deliberate indifference to a substantial risk of harm to his health or safety. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 305; Nami, 82 F.3d at 67. A prison official is deliberately indifferent when he or she "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

The problem with Plaintiff's conditions of confinement claim is that the mere confinement in a holding cell did not deny Plaintiff a basic human need or deprive him of the minimal civilized measure of life's necessities. Thus, Plaintiff's allegations do not satisfy the objective component of the Eighth Amendment. Moreover, Plaintiff's allegations do not satisfy the deliberate indifference standard, as the placement in a holding cell did not constitute a substantial risk of serious harm. Because the alleged deprivation was not sufficiently serious to inflict cruel and unusual punishment and no defendant was deliberately indifferent, the Court is constrained to dismiss the Eighth Amendment claim with prejudice.

B.  Taking of Plaintiff's Funds

Plaintiff complains that "on June 18, 2008, Defendants . . . did take total control over the funds in his possession upon his placement within a holding cell of the Community Education

Center known as Talbot Hall." (Docket Entry #1, p. 6.) He further asserts that on or after June 18, 2008, Jacqueline Perry, Contract Administrator for Talbot Hall, "did fail in her obligation to properly oversee the return of . . . the funds in his possession, and, the funds within his Trust Account by the staff of the Community Education Center known as Talbot Hall." (Id., p. 7.) The Court construes these allegations as an attempt to assert that defendants deprived him of property without due process of law. However, this due process claim fails as a matter of law because the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides all the process that is due. The NJTCA provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison officials. See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999). Because the NJTCA is an available remedy providing all the process which is due, Plaintiff's due process claim regarding the confiscation of funds fails and will be dismissed with prejudice. Id.

C.  Access to Courts

Plaintiff asserts that defendants "did endorse an unscrupulous policy that failed to provide the Plaintiff with a Law Library while he was a resident of the Community Education Center known as Talbot Hall;" defendants "did deny him access to the Courts by not possessing a Law Library within the boundaries of the facility known as Talbot Hall;" defendants "did conspire to stymie his ability to petition the Courts with the absence of a Law Library at Talbot Hall;" defendants "did record his legal communication with the Clerk of the United States District Court;" defendants "did withhold his legal documents from him and/or his family;" defendants "did conspire to withhold the Plaintiff's legal documents by not returning this documentation to

either him or his family;" and defendants failed "to properly oversee the return of his legal documents." (Docket Entry #1, pp. 4, 5, 6, 7.)

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). To establish standing, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe at 205-206 (quoting Christopher at 416-17).

In Monroe, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim that was based on the confiscation of legal materials:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes. In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike. That claim, on its face, was insufficient to state a claim under Harbury. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for

> their lost claims. Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

The Complaint before this Court suffers the same pleading deficiencies as the complaints in Monroe. Accordingly, this Court will dismiss the First Amendment access to courts claim.[5] See Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police, 411 F. 3d 427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost). However, because Plaintiff may be able to correct the aforesaid pleading deficiencies by filing an amended complaint, the dismissal of the access to courts claim will be without prejudice to the filing of an amended complaint stating a cognizable access to courts claim within 30 days. See Grayson v. Mayview State Hosp., 293 F. 3d 103, 108 (3d Cir. 2002).

D.  Claims Arising Under New Jersey Law

To the extent that Plaintiff seeks to assert claims arising under state law, the Court declines to exercise supplemental jurisdiction over these claims because all federal claims over which the Court has original jurisdiction are being dismissed. 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 383 F.2d 1277, 1284-5 (3d Cir. 1993).

---

[5] To the extent that Plaintiff raises a due process claim based on the loss of his legal materials, that claim is also dismissed. In Monroe, the Court of Appeals dismissed the inmates' procedural due process claim on the grounds that pre-deprivation notice is not constitutionally required and the prison grievance procedure provided an adequate post-deprivation remedy for the loss. See Monroe, 536 F. 3d at 210.

## IV. CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's application to proceed in forma pauperis, dismisses the federal claims asserted in the Complaint, and declines to exercise supplemental jurisdiction.

_____
**PETER G. SHERIDAN, U.S.D.J.**

Dated: April 14, 2011